**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ELIJAH DAVID MATHENY, )
)
Plaintiff, )
)
v. )   Civil Action No. 09-1070
)
COUNTY OF ALLEGHENY )   Magistrate Judge Cathy Bissoon
PENNSYLVANIA, ALLEGHENY )
COUNTY DISTRICT ATTORNEY'S )
OFFICE, NICHOLAS MOLLO, University )
of Pittsburgh Police Officer, and CHRIS )
AVETTA, Allegheny County District )
Attorney, )
)
Defendants. )

## MEMORANDUM ORDER

### I.    MEMORANDUM

Pending before the Court are Motions to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) filed by Defendants Allegheny County District Attorney's Office and Chris

Avetta ("DA Defendants") (Doc. 10) and by Defendant Nicholas Mollo ("Defendant Mollo")

(Doc. 15).  Because of the legal and factual similarities between these two motions, the Court

addresses them together.  For the reasons set forth herein, the Court grants in part and denies in

part the DA Defendants' Motion to Dismiss and grants Defendant Mollo's Motion to Dismiss in

its entirety.

## BACKGROUND

This action arises out of allegedly wrongful conduct perpetrated by Defendants Nicholas

Mollo of the University of Pittsburgh Police Department, Allegheny County Assistant District

Attorney Chris Avetta, the Allegheny County District Attorney's Office and Allegheny County.

Plaintiff asserts three claims:  (i) a claim for retaliation for the exercise of his rights under the

First Amendment; (ii) a claim for malicious prosecution under the Fourth Amendment; and (iii) a

claim for false arrest and false imprisonment in violation of the Fourth Amendment.  See

generally Compl. (Doc. 1.)

Plaintiff was arrested on April 29, 2009, for violating Pennsylvania's Wiretapping and

Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, et seq. ("Wiretap Act" or "Act").

(Compl. ¶ 42-43.)  Plaintiff, with his cellular telephone, recorded a conversation between

Defendant Nicholas Mollo, a University of Pittsburgh Police Officer, and Tamisha Evonne

Singletary ("Vonn").  (Compl. ¶ 35.)  Defendant Mollo asked Plaintiff whether he had used his

cell phone to record the officers and, also notably, whether his cell phone recorded both the

video and audio aspects of the incident.  Id. at ¶ 41.  After responding that he had made both an

audio and video recording of the incident, Defendant Mollo told Plaintiff "that he had not

consented to the recording of his voice and that he was placing [Plaintiff] under arrest."  (Compl.

at ¶¶ 41-43.)

After Plaintiff was arrested, and while he was being held in a holding cell at the

University of Pittsburgh Police Station, Defendant Mollo contacted the Allegheny County

District Attorney's Office and spoke to the "DA on duty," Assistant District Attorney Chris

Avetta, "to confirm his understanding of the law."  Id. at ¶¶48-51.  Mr. Avetta advised Defendant

Mollo that Plaintiff's actions violated the Wiretap Act.  Id.  Plaintiff then was transported to the

Allegheny County Jail and after an arraignment later that night, was released on non-monetary

condition bail.  Id. at ¶¶ 54-55.

## ANALYSIS

### A.      Absolute Immunity

Defendant Avetta argues that all of Plaintiff's claims against him should be dismissed

based on absolute immunity.  Specifically, Defendant Avetta asserts that "Plaintiff's claim is that

[he] ratified Plaintiff's arrest, failed to stop Officer Mollo from charging Plaintiff, or failed to drop the charge."  (Mem. in Supp. of Motion (Doc. 11) ("DA Defs' Br"). at 3.)  Accordingly, he argues that "a decision whether to charge a defendant is central to initiating prosecution and is subject to absolute immunity."  Id.  To the extent Plaintiff's claims against Defendant Avetta relate to any decisions he made concerning Plaintiff's prosecution, the Court agrees.  However, as to the crux of Plaintiff's allegations against Defendant Avetta, e.g., that he improperly provided legal advice to Defendant Mollo about the propriety of the arrest, the Court disagrees that absolute immunity applies.[1]

A prosecutor "bears the 'heavy burden' of establishing entitlement to absolute immunity."  Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008).  Absolute immunity is to be recognized in "quite sparing" circumstances and the presumption is that "qualified rather than absolute immunity is appropriate."  Id. (citing Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999)).  To analyze whether absolute immunity is appropriate, the focus is on the prosecutor's function and the conduct or act at issue must be narrowly defined.  Id. at 213. Absolute immunity is appropriate where a prosecutor can "show that he or she was functioning as the state's advocate when performing the action(s) in question."  Id. at 208.  Thus, "immunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings."  Id. (quoting Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994).)  "[T]he period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time

---

[1]    The DA Defendants styled their Motion to Dismiss as one on behalf of both Defendant Chris Avetta and Defendant Allegheny County District Attorney's Office.  In his Opposition, Plaintiff correctly noted that Defendant Allegheny County District Attorney's Office, as a matter of law, cannot assert either the absolute or qualified immunity defenses.  Owen v. City of Independence, 445 U.S. 622, 651 (1980). Accordingly, the Court reaches its opinions herein as to the availability of the absolute and qualified immunity defenses only as to Defendant Chris Avetta.

between indictment and dismissal, acquittal, or conviction." Id. at 211 (citing Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006).)

The crux of Plaintiff's allegations against Defendant Avetta involves Mr. Avetta's act of providing his opinion to Defendant Mollo as to whether Plaintiff's cell phone recording violated Pennsylvania's Wiretap Act. (Compl. at ¶ 51.) Contrary to Defendant Avetta's assertions, this act did not occur "during the prosecution phase of Plaintiff's criminal case." (DA Def's Reply at 1.) Based on Plaintiff's allegations, at the time that Defendant Avetta rendered his opinion, Plaintiff had not been arraigned. (Compl. ¶¶ 43, 47-55.) Defendant Mollo contacted Defendant Avetta "to confirm his understanding of the law," not to seek permission to arrest Plaintiff. (Compl. ¶ 50-51.) Moreover, he contacted Defendant Avetta as the "DA on duty" who allegedly "was responsible for giving immediate advice to law enforcement officers who called the office." (Compl. ¶ 51). In his role as the "DA on duty," Defendant Avetta merely "advised" that Plaintiff's actions "in the manner described [by Defendant Mollo] violated the Pennsylvania Wiretap Act." (Compl. ¶ 51.) Notably, Plaintiff does not allege that Defendant Avetta ordered or advised Defendant Mollo to do anything relative to Plaintiff's arrest or the criminal complaint that he ultimately filed against Plaintiff.

The Court concludes that Defendant Avetta's conduct in rendering his opinion on the propriety of Plaintiff's arrest was administrative and not "intimately associated" with the judicial phases of Plaintiff's prosecution. Indeed, the circumstance in which Defendant Avetta allegedly became involved in this matter (e.g., as the "DA on duty") suggests a non-prosecutorial advisory role, rather than the traditional prosecutorial one in which absolute immunity attaches. Stated differently, at the time that he rendered his opinion to Defendant Mollo, Defendant Avetta was not acting as an advocate on behalf of either Allegheny County or the Allegheny County District

Attorney's Office.  See Burns v. Reed, 500 U.S. 478, 493 (1991) (stating that "[w]e do not believe . . . that advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process,' that it qualifies for absolute immunity").  Defendant Avetta, accordingly, is not entitled to absolute immunity for his conduct in rendering legal advice to Defendant Mollo.

Having reached this conclusion, the Court observes that Defendant Avetta asserts the defense of absolute immunity as to all of Plaintiff's claims, including Plaintiff's claim for malicious prosecution in Count II.  In Count II, Plaintiff alleges that Defendants prosecuted Plaintiff "with malice" and "without any probable cause or reasonable basis for believing that Plaintiff violated Pennsylvania's Wiretap Act or committed any other crime in the Commonwealth of Pennsylvania."  (Compl. ¶ 67.)  As such, the focus of Plaintiff's allegations in Count II is on Defendant Avetta's role and function as a prosecutor, rather than his conduct in rendering advice to Defendant Mollo.  Assuming that Plaintiff could maintain a malicious prosecution claim against Defendant Avetta,[2] the Court concludes that Defendant Avetta is absolutely immune from this claim.  See Jones v. Middletown Twp., 253 Fed. Appx. 184, 190 (3d Cir. Nov. 8, 2007) (affirming dismissal of malicious prosecution claim on the basis that the district attorney "acted within the scope of her duties as a prosecutor . . . and the decision on whether or not to initiate or prosecute a case is completely discretionary"); see also Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).

---

[2]    It is unclear what allegations support Plaintiff's claim for malicious prosecution against Defendant Avetta.  Based on the allegations set forth in Plaintiff's Complaint, Defendant Avetta's involvement appears to have been limited to rendering advice to Defendant Mollo.  Despite this, Plaintiff asserts a claim for malicious prosecution which, by its very nature, focuses on the propriety of the prosecution.  The sufficiency of Plaintiff's allegations, however, is not the question before this Court and the Court will not render an opinion on this issue.

For the reasons set forth above, Count II of Plaintiff's Complaint for malicious prosecution against Defendant Avetta is dismissed with prejudice. As the focus of Counts I and III for First Amendment Retaliation and False Arrest and False Imprisonment is on Defendant Avetta's non-prosecutorial conduct in providing advice concerning the propriety of that arrest, the Court concludes that Defendant Avetta is not absolutely immune from Counts I and III of Plaintiff's Complaint.

**B.    Qualified Immunity**

Both Defendants Mollo and Avetta assert that they are entitled to qualified immunity. Defendant Mollo asserts that he is entitled to qualified immunity as to all of the claims brought against him and that Plaintiff's Complaint against him should be dismissed in its entirety. Defendant Avetta asserts that only Count I of Plaintiff's Complaint for First Amendment Retaliation should be dismissed on the grounds of qualified immunity.

Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). The immunity, therefore, applies "unless the official's conduct violated a clearly established constitutional right." Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 816 (2009). Generally, the question of whether qualified immunity applies consists of two inquiries: (i) whether the official's conduct at issue violated a constitutional right and (ii) whether the constitutional right alleged to have been violated was "clearly established" at the time of the conduct. Pearson, 129 S. Ct. at 815-16; Saucier v. Katz, 533 U.S. 194, 200-02 (2001).

As to the latter inquiry, a right is said to be "clearly established" if there is "'some but not precise factual correspondence between relevant precedents and the conduct at issue.'" Egolf v.

Witmer, 526 F.3d 104, 110 (3d Cir. 2008).  Thus, as the Supreme Court has articulated, in

assessing whether a particular right is "clearly established":

> The **contours of the right must be sufficiently clear** that a
> reasonable official would understand that what he is doing violates
> that right.  This is not to say that an official action is protected by
> qualified immunity unless the very action in question has
> previously been held unlawful, but it is to say that **in the light of
> pre-existing law the unlawfulness must be apparent**.

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987) (citations omitted) (emphasis added).  See

also United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399 (3d Cir.

2003) (stating that a right is "clearly established" if its "'outlines are sufficiently clear that a

reasonable [official] would understand that his actions violate the right'") (quoting Sterling v.

Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000)).

Moreover, the "qualified immunity analysis 'gives ample room for mistaken judgments

by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Egolf,

526 F.3d at 110-11 (quoting Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005)).  Thus, an additional

inquiry is the "closely related issue" of "whether the official made a reasonable mistake as to

what the law requires."  Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

### *1.     First Amendment:  Count I*

Plaintiff asserts that Defendants Mollo and Avetta violated his "clearly established" First

Amendment right to record the actions of police officers in public by arresting him in retaliation

for making a cell phone audio- and video-recording.  The Court disagrees that the First

Amendment right – assuming such a right exists at all[3] – was "clearly established" as of the date

of Plaintiff's arrest on April 29, 2009.

---

[3]         Under the U.S. Supreme Court's decision in Pearson, the Court is not required to proceed in the two-step
sequence set forth in Saucier.  See Pearson, 129 S. Ct. at 818.  Here, it is more appropriate first to address
what traditionally has been the second inquiry, e.g., whether the right alleged to have been violated was

As an initial matter, neither the United States Supreme Court nor the Third Circuit has held that individuals have an unfettered First Amendment right to record police officers in the performance of their official duties.  Although this is not dispositive of the issue, a review of the sparse existing decisional law reveals that the right – assuming one exists at all – is far from "clearly established."  Plaintiff's reliance on Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005) is misplaced.  In that case, the Court of Appeals for the Third Circuit – in a footnote addressing the district court's suggestion that plaintiff did not state a viable First Amendment claim – merely mentioned (without deciding) that "videotaping or photographing the police in the performance of their duties on public property **may be** protected activity" and that "photography or videography that has a communicative or expressive purpose enjoys **some** First Amendment protection."  Gilles, 427 F.3d at 212 n. 14 (emphasis added).  The Third Circuit has not expounded upon these assertions, or otherwise provided any guidance on the contours of any First Amendment right to videotape (with or without audio) or photograph the police.

Plaintiff also relies upon a case from the United States District Court for the Eastern District of Pennsylvania to establish that the right is "clearly established."  See Robinson v. Fetterman, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005) (concluding that plaintiff had a First Amendment right to videotape state troopers who were believed to be conducting improper safety inspections of trucks; plaintiff had been videotaping from some 20-30 feet away from private property and not interfering with the work of the state troopers).  In addition to Robinson, Plaintiff cites to a number of other decisions for the more general proposition that the First Amendment protects expressive conduct.  See, e.g., Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (concluding, without discussing the underlying facts, that district court

---

clearly established.  Because the Court finds that the alleged First Amendment right at issue here is not clearly established, the Court does not (and need not) reach the issue of whether Defendants Mollo and Avetta violated Plaintiff's Constitutional rights under the First Amendment.

erred in concluding that there was no First Amendment right to photograph or videotape police conduct).  Although these cases may recognize a limited right to videotape police conduct, subject to reasonable time, place, and manner restrictions, such a right notably has not been recognized in the context of an audio recording.  See Jones v. Gaydula, No. 85-1859, 1989 WL 156343, at *2 (E.D. Pa. Dec. 22, 1989) (in a case involving the constitutionality of an arrest of an individual under the Pennsylvania Wiretap Act for openly recording conversations with police officers, who had not consented to being recorded, district court set aside the jury's finding of a First Amendment violation and concluded that "there is no First Amendment right to tape record the statements of an unwilling utterant"), aff'd, 919 F.2d 730 (3d Cir. 1990).

This limited case law hardly evokes a sense of consensus on the issue, let alone that a First Amendment right to record the police is clearly established.  See Wilson v. Layne, 526 U.S. 603, 617 (1999) (holding that Fourth Amendment right was not clearly established, despite the existence of a state intermediate appellate court decision and two unpublished federal district court decisions; stating that "[p]etitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful"); see also Kelly v. Borough of Carlisle, --- F. Supp. 2d ---, No. 07-cv-1573, 2009 WL 1230309, at *8-9 (M.D. Pa. May 4, 2009) (in a factually analogous case, noting and distinguishing many of the same cases cited by the parties in the present action, including Robinson, and concluding that a First Amendment right to record the police was not clearly established as of the time of

plaintiff's arrest in May, 2007);[4] Gravolet v. Tassin, --- F. Supp. 2d ---, No. 08-3646, 2009 WL 1565864, at *3-4 (E.D. La. June 2, 2009) (citing to, inter alia, Robinson and concluding that "[g]iven the uncertainty in the caselaw and the lack of guidance from the Fifth Circuit, this Court is unable to find as a matter of law that there was a 'clearly established right to videotape police officers' at the time of the arrest [i.e., June 10, 2008] under these circumstances," which circumstances involved an individual who was arrested for stalking after he was discovered to have been videotaping an on-duty police officer who had previously arrested plaintiff).

Far from demonstrating that the right is clearly established, the existing decisions demonstrate that the law on the subject is plainly underdeveloped. Indeed, the cases relied upon by Plaintiff leave more questions than provide answers to officials like Defendants Mollo and Avetta, including, for instance, whether any First Amendment right to record includes, or extends to, audio recordings or recordings that involve both an audio and video component. The distinction between audio and video recordings may be particularly relevant here where Plaintiff alleges that Defendant Mollo asked whether his "cell phone recording had an audio component" and further alleges that Defendant Mollo specifically informed him "that he had not consented to the recording of his voice and that he was placing [Plaintiff] under arrest." (Pl's Compl. at ¶¶ 41-42.) Plaintiff's own allegations suggest that Defendant Mollo arrested him under the Pennsylvania Wiretap Act because Plaintiff had made an audio recording of his voice with his cell phone, and not necessarily because he had made a video recording. Under these circumstances, Defendants Avetta and Mollo acted reasonably in connection with Plaintiff's arrest for a violation of Pennsylvania's wiretap statute. Wilson, 526 U.S. at 617 (stating that the officers acted reasonably in light of the state of the law, which was "at best undeveloped"). A

---

[4]     The Court observes that Kelly, a decision discussed extensively in both parties' briefing and chiefly relied upon by Defendant, currently is on appeal to the Court of Appeals for the Third Circuit. See Third Circuit Court of Appeals Docket No. 09-2644.

reasonable official in Defendants' positions cannot be charged with parsing the minutiae of the existing decisions to discern the intent of the courts and determine whether Plaintiff, who had made both an audio and video recording with this cell phone while standing five feet away, had a First Amendment right to record in this manner the interaction between Defendant Mollo and Ms. Vonn.  Wilson, 526 U.S. at 617 ("[g]iven such an undeveloped state of the law, the officers in this case cannot have been 'expected to predict the future course of constitutional law'") (quoting Procunier v. Navarette, 434 U.S. 555, 562 (1978)).

In sum, in light of the existing law as of April 29, 2009, the Court concludes that the purported First Amendment right to record the police was not "clearly established."  The limited case law on the subject simply does not provide sufficient guidelines or define the contours of the right in such a manner that reasonable officials in Defendants' position would understand that their actions, which were motivated in the first instance by the Pennsylvania Wiretap Act, would impinge upon or violate Plaintiff's purported First Amendment right to record the incident. Because the First Amendment right to record police conduct is not "clearly established," the Court concludes that Defendants Avetta and Mollo are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim under Count I.  Accordingly, Count I of Plaintiff's Complaint against Defendants Avetta and Mollo is dismissed with prejudice.

### 2.    *Fourth Amendment:  Counts II and III*[5]

In Counts II and III of his Complaint, Plaintiff alleges that Defendant Mollo violated his Fourth Amendment right against unreasonable searches and seizures because he lacked probable cause to arrest him.  Defendant Mollo argues that Counts II and III should be dismissed on the basis of qualified immunity.  Plaintiff disagrees and asserts that Defendant Mollo had "no

---

[5]    Because Defendant Avetta has not sought dismissal of Counts II and III on qualified immunity grounds, the Court only discusses the availability of the qualified immunity defense as to Defendant Mollo.

grounds for arresting [Plaintiff] for violating the Wiretap Act" because a "reasonable officer in Mollo's position would not have believed that arresting [Plaintiff] for recording police officers carrying out their official duties was lawful because the Pennsylvania Supreme Court has held for more than a decade that [Pennsylvania's Wiretap Act] permits citizens to record – even surreptitiously – officers carrying out their official duties and that police officers have no reasonable expectation of privacy in carrying out their duties."  (Br. in Opp. to Def. Mollo's Mot. to Dismiss (Doc. 23) at 4-5.)  The Court concludes that Defendant Mollo is entitled to qualified immunity.

As an initial matter, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  Anderson, 483 U.S. at 639 (quoting and citing Harlow, 457 U.S. at 819). In the context of the action at bar, a police officer is entitled to qualified immunity if "'a reasonable officer could have believed that probable cause existed' to arrest [Plaintiff] 'in light of clearly established law and the information the [arresting] officers possessed.'"  Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224 (1991)).  The Court of Appeals for the Third Circuit has stated that the qualified immunity inquiry generally requires an assessment of:

> the circumstances that confronted [the officer] and to compare the circumstances present in those cases which have concluded that there was an absence of probable cause.  If there are cases that would make it 'apparent' to a reasonable officer in [the defendant officer's] position that probable cause was lacking, qualified immunity is not available.  If not, [the defendant officer] is entitled to qualified immunity.  As the Anderson Court noted, 'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'

Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000) (emphasis in original).[6]

The qualified immunity inquiry also has a "further dimension," which "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205; Anderson, 483 U.S. at 641 (stating that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present"). In these cases, as long as the "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205; Anderson, 483 U.S. at 641 (providing that even in cases of mistake, "those [reasonably mistaken] officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable"); see also Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (noting that the immunity analysis addresses whether "the officer made a reasonable mistake about the legal constraints on his actions and should therefore be protected against suit"); Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (noting that "another, closely related issue" is "whether the officer made a reasonable mistake as to what the law requires"). With those principles in mind, the Court turns to Defendant Mollo's claim of qualified immunity on Plaintiff's claim that he was arrested without probable cause.

Defendant Mollo arrested Plaintiff under Pennsylvania's Wiretap Act which provides, in relevant part:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

---

[6]     "Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff, 204 F.3d at 435.

18 Pa. C.S.A. § 5703. An "oral communication" is defined as "any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." Id. at § 5702. Consistent with these statutory provisions, Defendant Mollo arrested Plaintiff for "intentionally interecept[ing], [or] endeavor[ing] to intercept . . . [his] oral communication" with Ms. Vonn. See Compl. at ¶ 43; see also Pl. Compl, Ex. 1 at 4 (criminal complaint provides that plaintiff violated the statute by "record[ing] Officer McDaniel and myself with both audio and video without our consent and knowledge during an incident that involved the [plaintiff] and a friend of his [i.e., Ms. Vonn]").

The gist of Plaintiff's argument is that Defendant Mollo does not have qualified immunity because he did not have probable cause to arrest him because the Wiretap Act does not proscribe his particular conduct. More specifically, Plaintiff asserts that the Pennsylvania Supreme Court's decisions in Commonwealth v. Henlen, 564 A.2d 905 (Pa. 1989) and Agnew v. Dupler, 717 A.2d 519 (Pa. 1998) "demonstrate that an on-duty police officer has no expectation of privacy in communications made with another." (Pl's Opp. Br. to Mollo Mot. to Dismiss at 5.) In essence, Plaintiff argues that he did not violate the Wiretap Act because he did not record (or intercept) an "oral communication," as defined under the Act.

Neither Henlen nor Agnew, however, establishes that an officer in Defendant Mollo's position should not have an expectation of privacy, or that he should expect that he may be lawfully recorded. Indeed, a broader interpretation of these decisions that Plaintiff advances is questionable in light of the specific factual circumstances giving rise to the finding in those cases that the Wiretap Act had not been violated. Henlen, 564 A.2d at 906 (concluding that the prison guard's secret tape recording of his conversation with the state trooper did not violate the Wiretap Act because, among other things, oral interrogations generally are recorded and because

the state trooper also took notes of the conversation); Agnew, 717 A.2d at 524 (concluding that a police chief, who had eavesdropped on conversations of the officers in the squadroom via an intercom system, did not violate the Act because, among other things, the intercom system could be open at any time and conversations, therefore, could be overheard at any time).

In fact, Henlen has been distinguished in a situation far more analogous to the instant case, which undercuts Plaintiff's broad interpretation of that decision.  See Commonwealth v. McIvor, 670 A.2d 697, 703-04 (Pa. Super. Ct. 1996).  In McIvor, the Pennsylvania Superior Court rejected an argument similar to that advanced by Plaintiff here to conclude that an **officer** violated the Wiretap Act by secretly recording, without consent, his conversation with the motorist he had pulled over for a routine traffic stop.  Id.  In distinguishing Henlen, the court stated:

> Appellant posits that no one would have an expectation of privacy in any communication to a uniformed police officer.  However, it is just as likely that no one would expect that a roadside traffic stop conversation would be secretly recorded.  Under the circumstances of this case, while the stopped motorists had no expectation of privacy, they had a very real expectation of non-interception.  They legitimately could expect that their words would not be electronically seized and carried away by the officer.

Id. at 704.  Notably, the court stated, albeit in a footnote, that "[t]he result would be the same if the motorist was the one doing the intercepting."  Id. at 704 n. 5.  The McIvor decision has not been questioned by the Pennsylvania Supreme Court (including by Agnew, which post-dates McIvor) and remains good law.

As the above demonstrates, contrary to Plaintiff's arguments, Pennsylvania law is not so clear so as to proclaim that citizens are permitted to record police officers carrying out their official duties.  The law certainly does not make it "'apparent' to a reasonable officer in [Defendant Mollo's] position that probable cause was lacking."  Paff, 204 F.3d at 437.  In light

of the plain language of the statute and the case law interpreting the statute, the Court concludes

that a reasonable officer in Defendant Mollo's position would have believed that probable cause

existed to arrest Plaintiff.  At the very least, Defendant Mollo reasonably, but mistakenly,

concluded that probable cause existed to arrest Plaintiff and therefore, he was not violating any

constitutional rights, including Plaintiff's Fourth Amendment right to be free from arrest without

probable cause.  Saucier, 533 U.S. at 205 (noting that an officer may be mistaken in his or her

understanding of whether the conduct, e.g., the arrest, is legal and stating "[i]f the officer's

mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity

defense"); Carswell, 381 F.3d at 242; see also Jones v. City of Jersey City, 45 Fed. Appx. 196,

197 (3d Cir. 2002) (concerning plaintiff's argument that her actions did not justify her arrest

based on what New Jersey law required, court stated that plaintiff's "argument is beside the point

because qualified immunity permits officers to make reasonable mistakes about what is lawful")

(citing Saucier, 533 U.S. at 206)).[7]  For all of these reasons, the Court concludes that Defendant

Mollo is entitled to qualified immunity on Plaintiff's claims for malicious prosecution and false

---

[7]     The Court notes that Plaintiff relies on Jones v. Gaydula, 1989 WL 156343 (E.D. Pa. Dec. 22, 1989) to
support his argument that qualified immunity should not apply here.  However, Jones is plainly
distinguishable on its facts.  Unlike in the case at bar, in Jones, the plaintiff told the police officers that he
was taping their conversation, but the police officers, despite objecting to the recording, continued their
conversation with plaintiff.  Id. at *3.  Plaintiff was arrested at a later date, after the officers sought advice
from the district attorney as to whether plaintiff had committed a crime by making a nonconsensual tape
recording and after the officers obtained a search warrant to seize the tape recordings.  Id.  In concluding
that the officers did not have a reasonable expectation of privacy, the court focused on the officers' actions:
a "legitimate expectation of privacy would have entitled police to forbid the tape recording on the premises
and to enforce their instructions [to not record], especially if someone was under arrest and in custody.
Their failure to take any reasonable steps at the time might persuade a jury not only that plaintiff did not
violate the statute but also that defendants lacked probable cause to believe there had been a violation of the
statute and in fact did not believe such a violation had occurred."  Id. at *3.  Based on these facts, coupled
with evidence of "previous confrontation and bias by the defendant police officers and the Assistant
District Attorney" and evidence that the district attorney "was a part of the conspiracy to prevent his tape
recording," the court upheld the jury's determination that the defendants' belief that probable cause existed
was not objectively reasonable.  Id. at *3-4.  None of these circumstances exist in the case at bar.  Here,
after confirming that Plaintiff had recorded the conversation (to which conversation Plaintiff, notably, was
not a party), Defendant Mollo informed Plaintiff that he had not consented to the recording of his voice and
immediately arrested him for violating the Wiretap Act.  (Pl's Compl. at ¶¶ 35-43.)

arrest in Counts II and III of his Complaint.  Accordingly, Counts II and III of Plaintiff's Complaint against Defendant Mollo will be dismissed with prejudice.

## II.    ORDER

For all of the reasons stated above, the Court hereby **ORDERS** that Defendants Allegheny County District Attorney's Office and Defendant Chris Avetta's Motion to Dismiss (Doc. 10) is **GRANTED IN PART AND DENIED IN PART**.  Defendant Chris Avetta is not entitled to absolute immunity as to Counts I and III of Plaintiff's Complaint, but is entitled to absolute immunity as to Count II of Plaintiff's Complaint.  Additionally, Defendant Chris Avetta is entitled to qualified immunity as to Count I of Plaintiff's Complaint.  Accordingly, Counts I and II of Plaintiff's Complaint against Defendant Chris Avetta are dismissed with prejudice.

The Court hereby **ORDERS** that Defendant Nicholas Mollo's Motion to Dismiss (Doc. 15) is **GRANTED** in its entirety.  Defendant Mollo is entitled to qualified immunity as to each of the counts in Plaintiff's Complaint.  Accordingly, Plaintiff's Complaint against Defendant Mollo is dismissed in its entirety.

**IT IS SO ORDERED**.


s/ Cathy Bissoon_____
Cathy Bissoon
U.S. Magistrate Judge

March 16, 2010

cc (via email):

All Counsel of Record